IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE THE APPLICATION OF | * | |
| | * | |
| ANDREAS HARRIS, | * | |
|     Petitioner, | * | Civil Action File |
| | * | No.: 1:22-cv-02881-MHC |
| v. | * | |
| | * | |
| COURTNEY HAYNES, | * | |
|     Respondent. | * | |
| _____ | * | |

## **TRIAL BRIEF**

COMES NOW, ANDREAS HARRIS, Petitioner in the above-styled matter, and files this, his Trial Brief, and respectfully shows this Court as follows:

### I. FACTUAL BACKGROUND

The present action seeks the return of a minor child, L.E.M.H., to Sweden pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (herein the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act (22 U.S.C. § 9001 et. seq., hereinafter "ICARA"). L.E.M.H. was born in Sweden in 2018 to Petitioner and Respondent, and the Parties travelled between Sweden and the United States on from 2018 to 2020. During this period, Respondent actively participated in the process of obtaining

permanent residency permits for herself and her two (2) older children from a prior relationship. Petitioner, a Swedish citizen, helped to facilitate this process.

On or about August 10, 2020, the Parties married in the United States and departed the following day to relocate permanently to Sweden. The Parties initially resided in an Airbnb property until September 2020 and subsequently rented a furnished apartment from September 2020 until May 2021. During this period, the Parties visited the United States for the holiday season between November 2020 and January 2021. Upon the Parties' return to Sweden, L.E.M.H. began regularly attending a preschool program. Thereafter, the Parties executed a one (1) year lease for an unfurnished home beginning June 7, 2021, and expiring on June 7, 2022. Copies of both lease agreements were attached to Petitioner's Verified Petition as Exhibits 4 and 6.

On or about May 21, 2021, Respondent filed a verified *Special Appearance* in the Superior Court of Cobb County in the case of *Elijah Thorpe v. Courtney D. Haynes*, Civil Action File No.: 21-1-02150-58, requesting that the court dismiss a custody action regarding her older children. A copy of Respondent's *Special Appearance* is attached hereto as Exhibit "A." In her *Special Appearance* Respondent objected to jurisdiction in the Superior Court of Cobb County, stating that "Mother and the minor children have a significant connection with the country

of Sweden. Mother has enrolled the minor children in school in the country of Sweden, the children have strong ties to family in Sweden, and the children have friends and activities there." Respondent further states, in no uncertain terms, her understanding that she had sought permanent residency in "a **years-long process** of relocating with the minor children to Sweden, the home country of Mother's husband." (emphasis in original).

Shortly before Respondent left Sweden with L.E.M.H. in March 2022, the Parties began experiencing marital difficulties. These took the form of several mutual arguments, and the local police were involved on one occasion on or about March 18, 2022. This argument centered around Respondent's threat to leave Sweden with the minor child and her efforts to conceal the child's passport from Petitioner. At no point, however, did Petitioner physically strike or verbally threaten violence against Respondent or any of the minor children. To the contrary, Petitioner understood that the Parties would attempt to address their differences through Swedish social services.

On or about March 19, 2022, Respondent left Sweden with L.E.M.H unannounced and has refused to return with the child.

## II.  ARGUMENT AND CITATION TO AUTHORITY

A case arising under the Hague Convention demands a limited inquiry into only the question of whether a minor child must be returned to her country of habitual residence.  First, the Petitioner bears the burden of proving, by a preponderance of the evidence, a prima facie case for return of the child.  Once this is satisfied, the burden shifts to the Respondent to show that one of the enumerated affirmative defenses justifies a decision to not return the child.  Because Petitioner can make out a prima facie case for return of L.E.M.H. and none of the affirmative defenses apply, this Court should order the immediate return of L.E.M.H. to Sweden.

*A.  Prima Facie Case*

The prima facie case for return of the child is comprised of three parts.  The Petitioner must show that (1) the child was a habitual resident of another country, (2) the Petitioner had valid custody rights under the laws of the country from which the child was removed, and (3) the Petitioner was actually exercising or would have been exercising his custodial rights at the time of removal or retention.  Here, Respondent contests only the first element and contends that L.E.M.H. was a habitual resident of the United States at the time of removal.  Respondent

concedes that the Petitioner had valid custody rights under Swedish law and was actually exercising his parental rights at the time of removal.

The Convention requires the Court to first determine the country "in which the child was habitually resident immediately before the removal or retention." Hague Convention Art. 3(a). This finding goes specifically to one of the Convention's two primary principles: "to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court." *Friedrich v. Friedrich*, 78 F,3d 1060, 1064 (6th Cir. 1996). The Convention itself does not define "habitually resident." The United States Supreme Court has held that this is a fact-specific inquiry, and that "a child's habitual residence depends on the specific circumstances of the particular case." *Monasky v. Taglieri*, 140S.Ct. 719, 727 (2020).

In *Monasky*, the Supreme Court upheld a district court's order to return a child removed from Italy approximately two months after her birth, holding that the left-behind parent is not required to show actual agreement between the parents as to where the child is to be habitually resident. *Id.* at 728. Rather, the Court notes that common sense generally controls: "Where a child has lived in one place with her family indefinitely, that place is likely to be her habitual residence." *Id.* at 727. This inquiry also looks closely to the subjective intent of the parties regarding

the minor child's habitual residence. *Calixto v. Lesmes*, 909 F.3d 1079, 1084 (11th Cir. 2018). In the Eleventh Circuit, "the 'unilateral intent of a single parent' will not suffice to change a child's habitual residence." *Id*. (citing *Redmond v. Redmond*, 724 F.3d 729, 745 (7th Cir. 2013)).

Petitioner can show that Sweden was the country of habitual residence of L.E.M.H. at the time of removal in March 2022 and can make out a prima facie case for her return. As the Supreme Court held in *Monasky*, Petitioner here need not show that an actual agreement existed between the Parties to establish the child's country of habitual residence. Here, however, the evidence to be produced at the Final Hearing can lead to no other reasonable conclusion. As Respondent stated in her *Special Appearance*, she actively participated in the lengthy process of establishing permanent residency in Sweden for herself and for her two older children. Both L.E.M.H. and Respondent's older children were enrolled in school programs in Sweden, and L.E.M.H. spent the majority of her earliest years fostering strong connections with family and friends in Sweden. Nearly one year before Respondent left Sweden, the Parties had settled in a house where they lived continuously with all three minor children. Although Respondent expressed a desire to eventually move back to the United States, the Parties agreed to reside indefinitely in Sweden.

Even if the Court cannot determine whether the Parties reached an actual agreement to reside in Sweden indefinitely, L.E.M.H. cannot be said to be a habitual resident of any country other than Sweden. From the very beginning of the child's life, as Respondent stated in her *Answer*, the Parties intended for L.E.M.H. to have Swedish citizenship, deliberately traveling to Sweden the month before the child's birth to ensure she was born in Sweden and thus born into Swedish citizenship. Consequently, L.E.M.H. was born in Sweden to a Swedish citizen and, therefore, holds Swedish citizenship herself. Even at such a young age, L.E.M.H. made friends her age and built relationships with Petitioner's family who continues to reside in Sweden. Before March 2022, L.E.M.H. was not enrolled in any school program outside Sweden, nor did she reside indefinitely in any home other than the home the Parties leased in Sweden. An analysis of the totality of these circumstances can produce no conclusion but that L.E.M.H. was habitually resident in Sweden on March 20, 2022.

Because Respondent concedes that Petitioner had custodial rights under Swedish law and was actually exercising those rights in March 2022, these remaining elements of Petitioner's prima facie case need not be discussed. This Court should hold that the actual agreement of the Parties and the child's extensive connection to Sweden is sufficient to show that, as of March 2022, Sweden was

the child's country of habitual residence and, therefore, Petitioner has made out a prima facie case for return of the child to Sweden.

B. *Affirmative Defense*

Upon establishment of Petitioner's prima facie case for return, the Hague Convention permits the Respondent to raise five (5) affirmative defenses. In the Eleventh Circuit, these defenses are "construed narrowly so as to prevent them from swallowing the rule and rendering the Convention a dead letter." *Berenguela-Alvarado v. Castanos*, 950 F.3d 1352, 1358–59 (11th Cir. 2020) (internal quotes and citation omitted).

Respondent has raised only the "grave risk of harm" defense.[1] The Hague Convention provides that the Court is not bound to return a child where the Respondent can show that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention Art. 13(b). Respondent asserts that L.E.M.H. faces a grave risk of harm if returned to Sweden. Under the grave risk of harm defense, Respondent must show, *by clear and convincing evidence*, that the child faces a grave risk of harm if returned to his country of habitual residence.

---

[1] Respondent also asserts, as an affirmative defense, that "Sweden is not the Child's country of habitual residence." This determination, as described above, falls under Petitioner's prima facie case and does not constitute one of the five affirmative defenses under the Hague Convention.

*Romero v. Bahamonde*, 857 Fed. App'x 576, 586 (11th Cir. 2021).

A grave risk of harm under the Hague Convention presents a significantly higher burden than a "best interests" analysis in custody cases. Courts identify a grave risk of harm when, for example, "returning the child to a zone of war, famine, or disease" or "in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection." *Friedrich*, 78 F.3d at 1069 (refusing to accept the grave risk of harm defense where the child would merely have trouble re-adjusting to life in Germany if returned). *Cf. Romero*, 857 Fed. App'x at 586 (finding a grave risk of harm where the left-behind parent beat the abducting parent so severely that she miscarried and broke several bones); *Gomez v. Fuenmayor*, 812 F.3d 1005, 1013 (11th Cir. 2016) (finding a grave risk of harm where the left-behind parent had repeatedly threatened to kill the abducting parent and had threatened the child on at least one occasion); *Taylor v. Taylor*, 502 Fed. App'x 854, 857 (11th Cir. 2012) (finding a grave risk of harm where the left-behind parent and an anonymous third party had repeatedly threatened to kill the abducting parent).

Each of these cases reflects the general principle that, in order to rebut a

petitioner's prima facie case, "[t]he person opposing the child's return must show that the risk to the child is grave, not merely serious." *Friedrich*, 78 F.3d at 1068 (quoting Public Notice 957, 51 FR 10494, 10510 (March 26, 1986). Therefore, an abducting parent may only prevail on this defense if it is shown that the child would be "in imminent danger *prior* to the resolution of the custody dispute" or if the country of habitual residence is unwilling to protect the child's rights in its own court system. *Id*. at 1069 (emphasis in original).

In the case at bar, Respondent alleges a single, nonspecific "act of family violence" by Petitioner. Petitioner can only assume that Respondent is referring to a heated argument between the Parties on or about March 18, 2022, wherein Respondent threatened to leave Sweden with L.E.M.H. and concealed the child's passport from the Petitioner. When Petitioner challenged this threat and retrieved a copy of the passport, Respondent seized Petitioner by his shirt collar and attempted to wrest the passport from him by force. Petitioner escaped this, and a highly contentious but mutual debate ensued. Eventually, the local authorities were called to mediate the situation and cool tensions between the Parties.

Once again, Petitioner did not strike and has never struck the Respondent, much less in the presence of the child. Petitioner has not threatened violence of any kind against Respondent or the children. Petitioner has not been derelict or

neglectful in his duties as a husband or father; rather, he has attempted for many years to provide for a loving and nurturing environment for his family in Sweden. None of Respondent's allegations rise to the level of a "grave risk of harm" as contemplated by the Hague Convention. Unlike the cases cited above, this case does not require the Court to weigh the pros and cons of returning L.E.M.H. to a parent who is likely to neglect or abuse her or who has a history of doing so. Respondent fails to satisfy the high burden required by the grave risk of harm defense, and this Court should immediately order the return of L.E.M.H. notwithstanding Respondent's objection.

### III.  CONCLUSION

Petitioner can establish a prima facie case for the return of a child under the Hague Convention, and Respondent cannot support any of the affirmative defenses that permit this Court to refuse Petitioner's request for relief. This Court should order the immediate return of L.E.M.H. to Sweden.

Respectfully submitted, this ___ day of _____ 2022,

_____
PATRICIA D. SHEWMAKER
Georgia Bar No. 455069
Counsel for Petitioner
**SHEWMAKER & SHEWMAKER, LLC**
50 Technology Way Pkwy S

Peachtree Corners, Georgia 30092
Office 770-939-1939
pshewmaker@shewmakerlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE THE APPLICATION OF | * |
| | * |
| ANDREAS HARRIS, | * |
|     Petitioner, | *  Civil Action File |
| | *  No.: 1:22-cv-02881-MHC |
| v. | * |
| | * |
| COURTNEY HAYNES, | * |
|     Respondent. | * |
| _____ | * |

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served opposing counsel in the foregoing matter with a copy of the within and foregoing TRIAL BRIEF by electronic service in accordance with Local Rules:

Erik B. Chambers, Esq.
Stern Edlin Graham Family Law, P.C.
6190 Powers Ferry Road, Ste. 100
Atlanta, Georgia 30339
erik@segfamilylaw.com

_____
PATRICIA D. SHEWMAKER
Georgia Bar No.: 455069
Counsel for Petitioner

**SHEWMAKER & SHEWMAKER, LLC**
50 Technology Pkwy S
Peachtree Corners, Georgia 30092
770-939-1939
pshewmaker@shewmakerlaw.com

## **CERTIFICATE OF FONT AND POINT SELECTION**

I hereby certify that the foregoing was prepared in Times New Roman font in 14 point type in compliance with Local Rule 5.1(C).

_____
PATRICIA D. SHEWMAKER
Georgia Bar No. 455069
Counsel for Petitioner
**SHEWMAKER & SHEWMAKER, LLC**
50 Technology Way Pkwy S
Peachtree Corners, Georgia 30092
770-939-1939
pshewmaker@shewmakerlaw.com